IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINETTE MURPHY                  :

                               :

    v.                       :  Civil Action No. DKC 12-1975

                               :

SHIRLEY ADAMS, PRESIDENT           :
OF THE AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL        :
EMPLOYEES, ET AL.                  :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion to dismiss filed by Defendants Shirley Adams and the Executive Board of the American Federation of State, County and Municipal Employees, Local 2240 ("AFSCME 2250" or "the Union"). (ECF No. 5). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

## I.  Background

The following facts are taken from the amended complaint (ECF No. 2) and are construed in the light most favorable to Plaintiff Antoinette Murphy, the non-moving party. Murphy is employed by the Maryland State Board of Education in Prince George's County, Maryland ("the Board"). The bulk of Plaintiff's factual allegations focus on the conduct of Mr.

Palmer, an employee of the Board's whom she denotes was her supervisor.   Mr. Palmer allegedly:   (1) threatened Plaintiff with termination if she did not give in to his sexual advances; (2) forced her to meet with him on a daily basis in order to control, harass, and intimidate her; and (3) generally created a sexually hostile work environment.   Plaintiff also seemingly alleges that Mr. Palmer would have discussions about her with other men at work and tell them that he wanted to have sex with her.   Plaintiff also asserts that, because of her refusals to give in to Mr. Palmer's advances, she received poor performance reviews; suspensions without pay; verbal reprimands; and other disciplinary actions, including by being forced to attend training in Mr. Palmer's division.

AFSCME 2250 is Plaintiff's collective bargaining agent and is designated to file grievances on her behalf.   Plaintiff alleges that she reported Mr. Palmer's conduct to Faith Jones, the President of AFSCME 2250, on several occasions.   On one such occasion, Mr. Jones purportedly told Plaintiff that, if she gave Mr. Palmer what he wanted (*i.e.*, "sex"), then Mr. Palmer "would be putty in her hands."   (ECF No. 2 ¶ 14).   Mr. Jones then laughed and told Plaintiff "just [to] give him some."   (*Id.*).   Plaintiff alleges that, on January 12, 2010, she attempted to get help from the Union by complaining to Mr. Jones about being "sent home unfairly" by Mr. Palmer.   Mr. Jones responded by

2

laughing and again telling Plaintiff that she needed to "calm down and just give it to him and it would all stop." (*Id.* ¶ 17).   AFSCME 2250 purportedly refused to take or file a grievance on Plaintiff's behalf, but instead repeatedly advised her to give in to Mr. Palmer's sexual advances.   AFSCME 2250 allegedly commissioned a law firm to conduct "an EEO investigation," but refused Plaintiff's request for a copy of that report and did not take any action "to remedy the problem." (*Id.* ¶ 23).   Plaintiff then timely filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").[1]

Within 90 days of receiving a right to sue notice from the EEOC, Plaintiff filed a complaint in this court on July 3, 2012.[2] That same day, Plaintiff filed an amended complaint, asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and naming as Defendants AFSCME 2250; Ms. Adams, the President of AFSCME 2250;

---

[1] The amended complaint does not specify the date on which Plaintiff allegedly filed her EEOC charge, nor does it assert any details regarding what Plaintiff alleged in the charge.

[2] Here again, the amended complaint does not specify the date on which Plaintiff received the right to sue notice from the EEOC.

and the Board.[3]  Plaintiff labels Count One as "Sexual Harassment - Hostile Work Environment – Retaliation" and Count Two as "Sexual Harassment - Vicarious Liability."  AFSCME 2250 and Ms. Adams (together, "the Union Defendants") moved to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6).  (ECF No. 5).  Plaintiff filed an opposition (ECF No. 7),[4] and the Union Defendants replied (ECF No. 8).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further

---

[3] The Board has not yet been served with process.

[4] Plaintiff first filed her opposition on August 27, 2012 (ECF No. 6), and then filed a "corrected" opposition the next day (ECF No. 7).  The latter will be considered in this Memorandum Opinion.

factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

The Union Defendants raise three principal arguments in seeking dismissal of the complaint.  (*See* ECF No. 5-1).  First, they argue that, because AFSCME 2250 is not alleged to be Plaintiff's employer, the Union Defendants cannot be subject to liability under Title VII based on any of the theories asserted in the amended complaint (*i.e.*, sexual harassment, hostile work environment, or retaliation).  Second, the Union Defendants contend that any claim that Plaintiff seeks to assert against

AFSCME 2250 should be construed as a claim for breach of the duty of fair representation and is, therefore, time-barred. Finally, the Union Defendants contend that, even if Plaintiff's duty of fair representation claim were timely, it would still be subject to dismissal because the factual allegations do not establish that AFSCME 2250 had any obligation to file a grievance on Plaintiff's behalf.

In opposition to the Union Defendants' motion, Plaintiff disclaims any intent to bring a fair representation claim under the National Labor Relations Act ("NLRA"). (ECF No. 7, at 2). Rather, she asserts that AFSCME 2250, which "participated in the sexual harassment and refused to file a grievance on her behalf," is liable under Title VII. In support of this position, Plaintiff cites *Agosto v. Correctional Officers Benevolent Ass'n*, 107 F.Supp.2d 294, 305 (S.D.N.Y. 2000), for the proposition that "a union's refusal to process [a] member's sexual harassment complaint against employer [i]s a valid basis for a Title VII claim." The Union Defendants do not discuss the *Agosto* case in their reply, but instead continue to contend that any claim for breach of duty of fair representation is time-barred and does not meet Rule 8(a)'s pleading standard.

Although the complaint is not a model of clarity, Plaintiff asserts a plausible Title VII claim against the Union Defendants. Title VII proscribes labor unions from engaging in

6

certain types of discriminatory conduct.  Relevant here, Section

2000e-2(c) provides:

> It shall be an unlawful employment practice
> for a labor organization—
>
> (1) to exclude or to expel from its
>     membership, or otherwise to discriminate
>     against, any individual because of his
>     race, color, religion, sex, or national
>     origin;
>
> . . . .
>
> (3) to cause or attempt to cause an employer
>     to discriminate against an individual in
>     violation of this section.

42 U.S.C. § 2000e-2(c)(1), (3).

Under Subsection 2(c)(1), a labor union can be liable where

it directly engages in discrimination by, for example,

deliberately refusing to pursue a sexual harassment grievance on

behalf of a plaintiff.  *See, e.g.*, *Agosto*, 107 F.Supp.2d at 303

(explaining that a labor union "otherwise discriminate[s]" in

violation of Title VII when it fails to represent one of its

members in the grievance process because of that member's race,

color, religion, sex, or national origin); *Goodman v. Lukens

Steel Co.*, 482 U.S. 656, 667 (1987) (the phrase "otherwise to

discriminate" encompasses a union's "deliberate choice not to

process grievances" initiated by black employees alleging racial

discrimination), *superseded on other grounds by statute*, 28

U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons*

*Co.*, 541 U.S. 369, 371 (2004); *EEOC v. Regency Architectural Metals Corp.*, 896 F.Supp. 260, 269 (D.Conn. 1995) (holding that *Goodman* "applies equally to sex discrimination"). Pursuant to Subsection 2(c)(3), a labor union can also be held liable for discrimination perpetrated by the plaintiff's employer if the union "'instigat[es] or actively support[s]'" the employer's discriminatory acts. *Hubbell v. World Kitchen, LLC*, 717 F.Supp.2d 494, 501 (W.D.Pa. 2010) (quoting *Angelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3[d] Cir. 1999)); *see also McCollum v. Int'l Brotherhood of Boilermakers*, No. 03CV00355, 2004 WL 595184, at *3 (M.D.N.C. Mar. 10, 2004) (a claim under Subsection 2(c)(3) requires "active participation" by the union; "passive acquiescence" is not enough) (internal quotation marks omitted).

Here, Plaintiff's allegations state a claim against the Union Defendants under Subsection 2(c)(1).[5]  The amended complaint alleges that Plaintiff reported Mr. Palmer's sexual advances and threats to the Union on numerous occasions, including on January 10, 2010, and "attempt[ed] to get help" from the Union's President. The Union, however, refused to pursue a grievance on Plaintiff's behalf. Instead, on more than

---

[5] Because no party addresses whether Ms. Adams – an individual who purportedly serves as the President of AFSCME 2250 – can be held liable under Title VII, the instant Memorandum Opinion will not address this issue.

one occasion, Mr. Jones simply laughed and told Plaintiff to give in to her purported harasser's demands.  When viewed in the light most favorable to Plaintiff, these allegations give rise to a plausible inference that the Union itself engaged in sex-based discrimination by deliberately refusing to pursue a sexual harassment grievance on Plaintiff's behalf.[6]

The Union Defendants assert that, because the complaint does not specifically allege that the Board violated a particular provision of Plaintiff's labor contract, "whether or not the Union filed a grievance is immaterial" because a union's ability to pursue a grievance is only triggered by a contract violation.  (ECF No. 5-1, at 7).  The Union Defendants are apparently relying on a line of decisions where courts have held that, in order to prevail on a Title VII claim against a union, the member must satisfy "the *Bugg* test" by establishing

---

[6] By contrast, it is not as clear that the complaint can be construed as asserting a viable claim against the Union Defendants under Subsection 2(c)(3).  The complaint generally asserts that (1) an unspecified Defendant "ratified the [Board's and Mr. Palmer's] wrongful conduct by failing to take appropriate remedial action after becoming aware of the conduct" (ECF NO. 2 ¶ 20); (2) the Union failed "to remedy the problem" even after initiating an EEO investigation (*id.* ¶ 23); and (3) the Defendants collectively "did nothing to intercede and help Plaintiff" (*id.* ¶ 35).  These conclusory allegations probably do not give rise to a plausible inference that the Union Defendants instigated or actively participated in the Board's and Mr. Palmer's alleged acts of discrimination, as is required to prevail under Subsection 2(c)(3).  *See Hubbell*, 717 F.Supp.2d at 501; *McCollum*, 2004 WL 595184, at *3.

"'(1) that the company committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the Union's actions were motivated by [discriminatory] animus." *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 542 (7th Cir. 1987) (quoting *Bugg v. Int'l Union of Allied Indus. Workers, Local 507*, 674 F.2d 595, 598 n. 5 (7th Cir. 1982)).   In more recent cases, however, courts have rejected the *Bugg* test as too narrow.  *See, e.g.*, *Agosto*, 107 F.Supp.2d at 304 ("A Title VII claim may lie when there is a breach of the duty of fair representation outside the context of a breach of a collective bargaining agreement."); *Smith v. AFSCME Council 4*, No. 3:08-cv-1736, 2012 WL 3580285, at *15 (D.Conn. Aug. 17, 2012) (following *Agosto* and holding that "plaintiff need not show her employer violated the [collective bargaining agreement]; she need only show the union breached its duty of fair representation because of race").  The reasoning adopted in these cases is persuasive.  Accordingly, Plaintiff's failure to allege a specific breach of her labor contract by the Board is not fatal to her Title VII claim against the Union Defendants.

Finally, the Union Defendants contend that, because Plaintiff allegedly sought the Union's assistance at some point

in 2010 or 2011 but did not file suit until July 3, 2012, "any claim that Plaintiff seeks to bring against the Union for failing to file a grievance is time-barred" under both the NLRA's six-month statute of limitations and Maryland state law's 90-day statute of limitations.  As discussed, however, Plaintiff relies on Title VII rather than the NLRA or Maryland state law as the basis for her claim against AFSCME 2250, rendering the statutes of limitations invoked by the Union Defendants irrelevant.  Rather, Plaintiff's Subsection 2(c)(1) claim is governed by Title VII's exhaustion scheme.  Because the Union Defendants do not argue that Plaintiff failed to exhaust her administrative remedies in a timely manner or that Plaintiff failed to file her complaint promptly after receiving a right to sue notice, their timeliness argument must be rejected.[7]

## IV.  Conclusion

For the above reasons, the motion to dismiss filed by Defendants Shirley Adams and the AFSCME 2250 will be denied.  A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[7] To date, the Union Defendants also have not raised any argument that Plaintiff failed to exhaust her administrative remedies as to AFSCME 2250 and Ms. Adams.