IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINETTE MURPHY                    :

                                 :

     v.                          :   Civil Action No. DKC 12-1975

                                 :

SHIRLEY ADAMS, PRESIDENT             :
OF THE AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL         :
EMPLOYEES LOCAL 2250, ET AL.         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion for summary judgment filed by Defendants Shirley Adams, President of the American Federation of State, County, and Municipal Employees Local 2250, and the Executive Board of the American Federation of State, County, and Municipal Employees Local 2250 ("AFSCME 2250"). (ECF No. 59). Also pending are the third motion to compel filed by Plaintiff Antoinette Murphy (ECF No. 60), the amended motion for extension of time filed by Plaintiff (ECF No. 63), and the motion to strike filed by Defendants (ECF No. 69). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to compel will be denied. The motion for an extension of time will be granted, but the motion

to strike will be denied.   The motion for summary judgment will be granted in part and denied in part.

## I.   Background[1]

Plaintiff was a bus driver for Prince George's County public schools.   She was a member of Defendant AFSCME 2250, of which Defendant Adams is the President.   AFSCME 2250 is Plaintiff's collective bargaining agent and is designated to file grievances on her behalf.   Plaintiff alleges that Mr. Bernard Palmer, an employee of the school system and Plaintiff's supervisor, subjected Plaintiff to *quid pro quo* sexual harassment.   Specifically, Mr. Palmer forced Plaintiff to meet with him on a daily basis throughout the course of his supervision to control and intimidate her and threatened Plaintiff with termination if she did not give in to his sexual advances.   He reprimanded her and pulled her off assignments. Mr. Palmer would tell other men on the job that he wanted to have sex with Plaintiff.   Plaintiff informed Mr. Faith Jones, President of AFSCME 2250, about Mr. Palmer's behavior.[2]   On September 24, 2009, Mr. Jones told Plaintiff that "if she gave

---

[1]   Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

[2]   Plaintiff designates both Mr. Jones and Ms. Adams as the President of AFSCME.   It is not clear whether one succeeded the other or whether Plaintiff is correct as to the status of Mr. Jones or Ms. Adams.

him what he wanted, then Mr. Palmer would be putty in her hands." Mr. Jones laughed and told Plaintiff to just "give him some." (ECF No. 2 ¶ 14; ECF No. 59-3, letter from Plaintiff to Mr. Richard Putney, AFSCME 2250's Executive Director). That same day, Plaintiff had a meeting with Mr. Putney and Ms. Adams to discuss a variety of complaints, including her foremen not giving her proper work, her coworkers constantly lying to her, and the harassment she was experiencing. (ECF No. 59-2, at 19- 20, Trans. 114:19 – 115:8, Plaintiff Dep.). Plaintiff stated that she did not characterize Mr. Palmer's behavior as sexual, only that he constantly wanted to be with her in an abnormal manner that made her feel very uncomfortable and constituted harassment in her mind. (*Id.* at 21, Trans. 116:1-9). Mr. Putney stated that Plaintiff needed to file harassment charges and Ms. Angela Thomas (an employee of AFSCME 2250) needed to get the paperwork ready. Plaintiff was unsure exactly what the union was planning to do, however. She told Mr. Putney "to file a harassment"; she did not ask him to file a sexual harassment grievance, and Mr. Putney did not indicate he was going to file such a grievance. Plaintiff states that AFSCME 2250 would not take or file a grievance on Plaintiff's behalf. The school system and AFSCME were in concert and the intentional discrimination resulted in many adverse employment actions against Plaintiff, including suspension without pay, verbal

reprimand, consistently poor evaluations, and training that consisted of sitting in Mr. Palmer's division all day and reading a manual.

On January 12, 2010, Plaintiff, attempting to get help from her union, explained to Mr. Jones that she had been sent home unfairly by Mr. Palmer before she started her run.  Mr. Jones laughed and told her that she needed to calm down.  Plaintiff responded that she was tired of the constant harassment from her supervisors and that the union needed to step in and properly represent her.  Mr. Jones then told Plaintiff that "I told you Palmer likes you, just give it to him and it will stop."  Plaintiff responded that she was not kidding.  Mr. Jones responded that he was not kidding.  Later that day, Mr. Jones kept suggesting "that I [Plaintiff] give into Mr. Palmer and just fix him up.  This will all go away."  (ECF No. 59-3, at 2).

Plaintiff states that she would call AFSCME 2250 whenever Mr. Palmer wanted to meet with her alone.  She states that Ms. Thomas and Mr. James Spears would tell her just to go ahead and meet with him alone, and whatever he gives you or whatever he tells you, then bring that back to the union and they will deal with it.  (ECF No. 66-2, at 13-14, Trans. 252:13 – 253:18).  At some point AFSCME 2250 informed Plaintiff that it would not file a grievance on behalf of Plaintiff in regard to Mr. Jones's comments.  Ms. Wanda Newman and Ms. Shirley Breeze, members of

the union's executive board, were given responsibility for the matter, but told Plaintiff that they did not know how to approach this matter. (*Id.* at 16-17, Trans. 281:1 – 282:4)

On July 3, 2012, Plaintiff filed a complaint against Defendants Adams, AFSCME 2250, and the Board of Education of Prince George's County. The complaint contains a claim of "Sexual Harassment – Hostile Work Environment – Retaliation" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Plaintiff alleges that Defendants refused to take action following Plaintiff's numerous complaints. The second count of her complaint alleges "Sexual Harassment – Vicarious Liability" in violation of Title VII. Plaintiff alleges that Mr. Palmer would not have taken the tangible employment actions against her had Defendants interceded on her behalf. Defendants Adams and AFSCME 2250 filed a motion to dismiss, which this court denied by Memorandum Opinion and Order on January 31, 2013. (ECF Nos. 14 and 15). Defendant Board of Education of Prince George's County filed a motion to dismiss for improper service, which was granted on March 1, 2013. (ECF Nos. 25 and 26). On January 17, 2014, after a period of discovery, Defendants Adams and AFSCME 2250 filed a motion for summary judgment. (ECF No. 59). A response was due by February 3, 2014. On February 2, 2014, Plaintiff filed a motion for extension of time. That motion was denied without prejudice

5

subject to renewal for failure to comply with Local Rule 105.9.
On February 20, 2014, Plaintiff renewed her motion for an
extension of time to file her response to March 1, 2014.  (ECF
No. 63).   Defendants opposed this motion on March 10, 2014.
(ECF No. 67).   Plaintiff filed her opposition to Defendant's
summary judgment motion on March 1, 2014.  (ECF No. 65).
Defendants filed a motion to strike Plaintiff's opposition on
March 14, 2014.  (ECF No. 69).  Plaintiff responded on April 1,
2014 (ECF No. 72), and Defendants replied on April 18, 2014 (ECF
No. 76).   Plaintiff filed a motion to compel depositions on
February 2, 2014.   (ECF No. 60).   Defendants responded on
February 21, 2014.  (ECF No. 64).

## II. Analysis

### A.  Motion to Compel

Plaintiff filed a motion to compel Defendants to produce
witnesses for depositions and to impose sanctions on Defendants.
Discovery in this case was originally scheduled to close on July
15, 2013.  Plaintiff requested an extension which was granted,
setting the new deadline at September 5, 2013.  Plaintiff filed
a motion to compel Defendants to produce an investigative report
prepared by Defendants' counsel concerning Plaintiff's
allegations and filed a second motion to extend discovery to
allow her to depose certain individuals that she learned about
from documents Defendants produced.   Following a telephone

conference, the court ordered the parties to consult on the documents Plaintiff desires and, if the documents concern matters at issue in this case, then the depositions of James Spears and Angela Thomas will be conducted, limited to inquiry about those documents.  Furthermore, a hearing was scheduled to resolve whether Plaintiff was entitled to the investigative report.  (ECF No. 53).  The Defendants subsequently agreed to produce the investigative report, rendering the hearing unnecessary.  Defendants represent that they conferred with Plaintiff about the need for depositions of Ms. Thomas or Mr. Spears, but could not come to an agreement.  Plaintiff has never noted these depositions.  Only after Defendants filed their motion for summary judgment did Plaintiff file this motion to compel.  Plaintiff argues that now that the report has been produced, she needs to depose some union members mentioned in the report in order to obtain discoverable evidence concerning Plaintiff's request for aid from ASCFME 2250.

Plaintiff's motion will be denied.  She fails to identify who she needs to depose or why she only learned of their identities now, given that she had previously seen a copy of the investigation.  If Plaintiff seeks to depose Ms. Thomas or Mr. Spears, she certainly knew of their identities, as evidenced by her September 2013 deposition.  (*See* ECF No. 66-2, at 13, Trans. 252:11-19).  Plaintiff also does not explain the months-long

delay in filing a motion to compel once the report was produced or why she failed to notice any depositions. Her motion to compel and to impose sanctions will be denied.

## B.   Motion for Extension of Time

Plaintiff requested an extension of time to file her opposition to Defendants' motion for summary judgment. Her first request was filed within the deadline for filing her opposition, but it was denied without prejudice subject to renewal. Seventeen days later, Plaintiff filed her renewed motion, stating that her counsel had a trial that was originally scheduled for September 30, 2013 pushed back to January 10, 2014. This case, combined with Plaintiff's counsel's additional case load and the holiday season, posed a real time management hardship. Defendants represent that Plaintiff contacted them on the day the court denied Plaintiff's extension of time to determine whether Defendants would consent to such an extension. That day, Defendants responded that they would not so consent. Plaintiff's counsel explains that a personal family emergency in the last two weeks caused the delay in renewing her motion.

Rule 6 of the Federal Rules of Civil Procedure provides different standards for a court when considering a request for extension of time, depending on whether the request is filed before or after the original time expires. When made before the original time expires, the court need only find good cause to

extend the deadline.    Fed.R.Civ.P. 6(b)(1)(A).    By contrast,
when the request is made after the original deadline, the court
may grant the motion only when the requesting party demonstrates
good cause that it failed to act because of excusable neglect.
*Id.* 6(b)(1)(B).   Defendants argue that Plaintiff is required to
demonstrate "excusable neglect" under 6(b)(1)(B) because she
filed her request for extension of time on February 20, 2014,
after the original February 2, 2014 deadline.

Defendants' argument will be rejected.   They point to no
authority that states that a motion for extension of time filed
before the deadline, denied without prejudice subject to
renewal, and then refiled after the deadline is now subject to
Rule 6(b)(1)(B)'s more demanding "excusable neglect"
requirement.   Plaintiff's original explanation for her need for
an extension is sufficient under Rule 6(b)(1)(A) and her motion
will be granted.

### C.    Motion to Strike

Defendants move to strike documents included in Plaintiff's
opposition.   In their motion for summary judgment, Defendants'
principal argument is that Plaintiff failed to exhaust her
administrative remedies because she failed to file her charge
with the EEOC within 300 days of the allegedly discriminatory
act.   42 U.S.C. § 2000e-5(e)(1).   Plaintiff's EEOC charge form
lists the latest date of discrimination as April 15, 2010, but

the form was filed on July 28, 2011, well outside the 300 day window. (ECF No. 59-4). In her opposition to Defendants' motion, however, Plaintiff provides a letter dated November 8, 2010 from Plaintiff's counsel to the EEOC's Baltimore office outlining the alleged discrimination committed by the Board of Education and AFSCME 2250. Also provided is a completed EEOC Intake Questionnaire dated November 20, 2010. Plaintiff argues that these documents demonstrate that a charge was filed within 300 days of the alleged discriminatory acts. Defendants respond that this is the first time they have seen these documents despite the fact that the document request propounded upon Plaintiff during discovery specifically requested "a copy of any and all documents or communications concerning the EEOC charge referenced in . . . your Amended Complaint." (ECF No. 69-2, at 5). Furthermore, Defendants also requested "a copy of any and all documents or communications you [Plaintiff] intend to rely on in support of the claims you make against the Union in your Amended Complaint." (*Id.*). In their first set of interrogatories, Defendants asked Plaintiff to "[p]rovide an explanation of what steps you took to 'timely file a charge of discrimination against defendant with the Equal Employment Opportunity Commission (EEOC)' as alleged in Paragraph 4 of your Amended Complaint." (ECF No. 69-3, at 7). According to Defendants, despite these multiple requests, Plaintiff failed to

10

identify or produce the documents she now relies on in her opposition to Defendants' motion for summary judgment. Defendants contend that Plaintiff should not be permitted to rely upon this evidence pursuant to Rule 37(c)(1).

Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006). District courts have broad discretion in determining whether a nondisclosure is substantially justified or harmless. *See id.* In *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit set forth several factors to guide district courts in making this determination. A court may consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." District courts need not expressly consider each *Southern States*

factor when evaluating discovery violations. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011).

Plaintiff acknowledges that these documents were not produced in response to Defendants' discovery requests because at the time Plaintiff believed they were privileged. Plaintiff provides her answers to Defendant's first set of document requests where, in response to the demand for any and all documents or communications concerning her EEOC charge, she responded "Objection, parts of the communication is privileged. The non-privilege is produced." (ECF No. 72-1, at 2). Plaintiff submits that the original charge and a letter from the EEOC reopening the charge were produced as part of discovery. Plaintiff contends that the discovery period is now closed and Defendants never moved to compel Plaintiff to produce these documents and, in addition, "there have been several phone conferences with the Court concerning discovery dispute and the issue of the Charge not being produced was never raised by the Defendant." (ECF No. 72, at 2). Finally, Plaintiff argues that Defendants have not been prejudiced or negatively impacted because EEOC sends a notice and copy of the charge to the employer. *See* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, the [EEOC] shall serve a notice of the charge . . . on such employer [or] labor organization within ten days."); 29 C.F.R. §

1601.14(a) ("Within ten days after the filing of a charge in the appropriate [EEOC] office, the [EEOC] shall serve respondent a copy of the charge."). Defendants reply by pointing out that any contention that they slept on their rights concerning discovery is ridiculous given that they were completely ignorant of these documents until they appeared in Plaintiff's opposition to summary judgment, despite having asked for them. Even if they were privileged, Plaintiff never produced a privilege log as required. Finally, to Plaintiff's argument that her failure to produce was harmless because the EEOC would have sent it to Defendants, Defendants argue that the federal discovery rules do not contain a "you should have already had this" exception.

Plaintiff will be permitted to rely upon the documents submitted as part of her opposition. Plaintiff's behavior is by no means justified: as Defendants point out, if she truly believed the intake questionnaire submitted to the EEOC was protected by an evidentiary privilege, she was obligated at least to create a privilege log, in order to alert Defendants to the existence of such a document to allow them to challenge the asserted privilege. But as Plaintiff points out, albeit inconsistently, federal law requires the EEOC to serve a charge upon the employer or union within ten days of filing and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

*United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926).  It is hard to fathom how a document slated for release by the EEOC can be privileged.    Nevertheless, under the circumstances, Plaintiff's failure to produce the EEOC intake questionnaire is not sufficiently prejudicial.  *See Russell v. Bronson Heating & Cooling*, 345 F.Supp.2d 761, 777-78 (E.D.Mich. 2004) (finding failure to disclose intake questionnaire harmless); *Tolerico v. Home Depot*, 205 F.R.D. 169, 177 (M.D.Pa. 2002) (same).

**D.    Motion for Summary Judgment**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.    *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  The moving party bears the burden of showing that there is no genuine dispute as to any material fact.    However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex,* 477 U.S. at 322-23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion

with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   477 U.S. at 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."   *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of

evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

Defendants first argue that Plaintiff's claims are barred because she has failed to exhaust her administrative remedies. "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 406 (4th Cir. 2013). The burden of proving subject-matter jurisdiction rests with the plaintiff. *See Evans v. B.F. Perkins Co., A Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999). The Fourth Circuit has explained that

> [i]n any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge. *See Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the

16

> administrative charge of discrimination
> generally operate to limit the scope of any
> subsequent judicial complaint."). If the
> plaintiff's Title VII claims "exceed the
> scope of the EEOC charge and any charges
> that would naturally have arisen from an
> investigation thereof, they are procedurally
> barred." *Chacko [v. Patuxent Inst.]*, 429
> F.3d [505,] 506 [(4th Cir. 2005)] (*quoting
> Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156
> (4th Cir. 1995).

*Balas*, 711 F.3d at 407-08; *see also Evans*, 80 F.3d at 963 ("Only

those discrimination claims stated in the initial charge, those

reasonably related to the original complaint, and those

developed by reasonable investigation of the original complaint

may be maintained" in a subsequent lawsuit).

Consistent with these principles, "a claim in formal

litigation will generally be barred if the EEOC charge alleges

discrimination on one basis, such as race, and the formal

litigation claim alleges discrimination on a separate basis,

such as sex." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300

(4th Cir. 2009). Likewise, where the EEOC charge and the

complaint allege the same type of claim (*e.g.*, race-based

discrimination), the formal litigation claim may still be barred

if the central factual allegations supporting it were not raised

in the EEOC charge. *See, e.g., Chacko v. Patuxent Inst.*, 429

F.3d 505, 506 (4th Cir. 2005) (national origin-based

discrimination claim barred where "administrative charges

reference different time frames, actors, and discriminatory

17

conduct than the central factual allegations in [her] formal suit"); *Jones v. Republic Servs.*, No. AW-10-cv-1999, 2011 WL 6000761, at *2-3 (D.Md. Nov. 29, 2011) (where EEOC charge alleged race-based disparate treatment based on the plaintiff's suspension and termination, claim for race-based disparate treatment based on employer's refusal to grant an alternative work schedule was barred). "At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko*, 429 F.3d at 509; *see also Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 595 (4th Cir. 2012) (although the administrative charge and the judicial complaint alleged different facts in support of a disability discrimination claim, they involved the same place of work, the same actor, the same type of discrimination, and the same disability).

Defendants submit that Plaintiff's EEOC charge fails to reference in any way the allegations that provide the basis for Plaintiff's complaint in this case. Plaintiff's EEOC charge makes no reference to Mr. Palmer or a claim that he was sexually harassing her, yet the allegations with respect to Mr. Palmer's purported conduct form the entire basis of Plaintiff's two counts in this court. Defendants also point to Plaintiff's deposition testimony where she states that her EEOC charge had

18

nothing to do with Mr. Palmer, but was instead directed against AFSCME 2250 and Mr. Jones and, in addition, that her letter to Mr. Putney did not concern Mr. Palmer's actions, but was only based on union matters.

Plaintiff's EEOC charge is against only one entity: AFSCME 2250.  The Board of Education is not listed.  Plaintiff states that the discrimination is based on sex and retaliation in the form of a hostile work environment.  She spells out three particulars:

> (1) Despite numerous attempts to obtain representation, regarding several employment concern[s] against my employer, the above Respondent has failed to adequately represent my interests and has failed to intervene on my behalf.

> (2) I have not been provided with a reason for the Respondent's lack of action on my behalf or a valid explanation as to why I have not been adequately represented.

> (3) The President of the Union (local 2250) told me that sex with my supervisor to stop him harassing me and threatening me with suspension and termination.  I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding failure to provide union representation based on my sex, female.

(ECF No. 59-4).  Defendants' arguments will be rejected.  It is understandable that the bulk of Plaintiff's complaint in this court refers to Mr. Palmer's actions because at one point the Board of Education was a Defendant.  The complaint does allege

that she spoke with Mr. Jones about Mr. Palmer's behavior and
was advised to have sex with Mr. Palmer and that AFSCME 2250
would not take or file a grievance on Plaintiff's behalf or take
other actions to remedy the problem.  (ECF No. 2 ¶¶ 14-15, 23,
27).   These allegations track those made to the EEOC.   Mr.
Palmer's alleged actions, while not explicitly spelled out in
the EEOC charge, could be expected to come out of a reasonable
investigation of Plaintiff's claims given that they form the
underlying basis for Plaintiff's complaint that her union did
not intervene when requested to stop alleged harassment by her
supervisor.   Finally, what Plaintiff said or did not say in her
letter to Mr. Putney is immaterial to this issue, which is only
concerned with whether Plaintiff – through her EEOC charge –
exhausted administratively her claims.  She has done so.

Defendants next contend that the claims against AFSCME 2250
are untimely.   Title VII requires a plaintiff to file an EEOC
charge within a prescribed limitations period.   42 U.S.C. §
2000e-5(e)(1).   In deferral states such as Maryland, that
limitations period is 300 days from the date of the allegedly
discriminatory act.   *Id.*[3]  "Courts strictly adhere to these time
limits  and  rarely  allow  equitable  tolling  of  limitations

---

[3] A "deferral state" is one that has its own state or local
agency with authority to grant or seek relief from employment
discrimination or to institute criminal proceedings on behalf of
the alleged victim. 42 U.S.C. § 2000e-5(e)(1).

periods." *Khoury v. Meserve,* 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

The first question concerns what counts as the "EEOC charge." Defendants provided a charge made to the Prince George's County Human Relations Commission, cross-filed with the EEOC. The charge was filed on July 28, 2011, but lists the latest date that discrimination occurred as April 15, 2010, well outside the 300-day window. In her opposition to Defendants' summary judgment motion, however, as noted above, Plaintiff produced a letter dated November 8, 2010, written to the EEOC's Baltimore office requesting that the letter constitute the filing of a formal charge of discrimination against the Board of Education and AFSCME 2250. Plaintiff represents that a charge questionnaire was mailed to Plaintiff. Plaintiff completed this questionnaire on November 20, 2010, where she alleges that she complained to the union but nothing was done about it. This document is attached to Plaintiff's opposition. The EEOC then prepared a final charge form which was sent to Plaintiff, signed by her, and returned to the EEOC. It is this final charge form that Defendants rely upon.

Title VII requires that a charge "contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). Pertinent EEOC regulations state that a charge shall contain the following information: (1) the full name, address,

21

and telephone number of the person making the charge; (2) the full name and address of the person against whom the charge is made; (3) a clear and concise statement of the facts, including relevant dates, regarding the alleged unlawful practices; (4) if known, the approximate number of employees of the respondent; and (5) a statement disclosing whether any proceedings regarding the alleged unlawful practices have been commenced before a state or local agency.  29 C.F.R. § 1601.12(a).  Notwithstanding these specific requirements, however, the EEOC regulations also contain a catchall clause, which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.* § 1601.12(b).  In addition to satisfying the EEOC regulations, a filing must also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee" before it can be deemed a charge.  *Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 402 (2008).[4]

---

[4] *Holowecki* addressed the question of whether an intake questionnaire constitutes a charge for purposes of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621. Numerous courts in this district and elsewhere have applied *Holowecki*'s objective test in cases arising under Title VII.

Plaintiff's counsel's November 8th letter to the EEOC states that it is being filed on behalf of Plaintiff and is a formal charge of discrimination against AFSCME 2250 and the Board of Education.  The name and address of Plaintiff are provided.  The letter states that there are over 5,000 employees employed.  It goes on to state that Plaintiff has "been sexually harassed by my supervisor and told by another management official that in order to stop the sexual harassment all I had to do was 'give the supervisor some sex.'"  (ECF No. 66-4, at 3).  Plaintiff was told this on two separate occasions: September 24, 2009 and January 12, 2009.  Plaintiff states that she has been subjected to a hostile work environment that has led to her becoming physically ill.  "The supervisor" constantly followed her around, used his authority to force her to meet with him on a daily basis and subjected her to disciplinary action that other employees were not subjected to.  She states that she has been retaliated against because she has not given into the supervisor's sexual advances.  She writes: "Why you believe you were discriminated against.  I am being sexually harassed, retaliated against and subjected to a hostile work environment." (*Id.*).  Plaintiff's intake questionnaire gives her contact information.  When asked which organizations discriminated

---

*See, e.g., Grice v. Balt. Cnty.*, No. JFM 07-1701, 2008 WL 4849322, at *4 n.3 (D.Md. Nov. 5, 2008) (collecting cases).

against her, she checks boxes for "Employer" and "Union," but only provides contact information for the Board of Education. Under the bases for her claim of discrimination, she checks boxes for "Sex," "Age," "Religion," and "Retaliation." Under "other basis for discrimination" she writes in "Hostile Work Environment." Under the question "What happened to you that you believe was discriminatory?", she writes "See Attached Statement," while also writing "Faith Jones" and "Mr. Palmer" as the persons responsible and "Mr. Palmer" responsible for sexual harassment. For the question "Why do you believe these actions were discriminatory?" she refers again to the attached statement. When asked whether there are any witnesses to the alleged discriminatory incidents, Plaintiff lists Defendant Adams and states that she will tell the EEOC "[h]ow the union and employer responded to the allegations." Plaintiff stated that she filed a charge previously with the EEOC or another agency, explaining that "I file[d] a complaint with employer and union – nothing was done except an investigation took place and a report was prepared." Finally, the questionnaire provides a choice as to what the preparer wants the EEOC to do with this information: Box 1 states that the preparer wants to talk with an EEOC employee before deciding whether to file a charge. Box 2 states that the preparer wants to file a charge of discrimination and authorizes the EEOC to look into the

discrimination described above.  Plaintiff checked Box 2.  While
Plaintiff's intake questionnaire and attached statement are far
from a model of clarity, they do list AFSCME 2250, check the box
for sex discrimination, discuss the statements of September 24,
2009, and January 12, 2010, and hint at the fact that the union
did not fulfill its duties to investigate her allegations of
discrimination.  *See, e.g., Dixon v. Shasta Beverages, Inc.*, No.
WDQ-12-0569, 2012 WL 4774808, at *4 (D.Md. Oct. 5, 2012)
(concluding that intake questionnaire was a charge where it
named the parties involved, checked the racial discrimination
box, described the relevant incident and ongoing harassment, and
defendant was informed of the general nature of the actions or
practices); *Enoch v. Becton, Dickinson & Co.*, No. ELH-11-3551,
2012 WL 2371049, at *6 (D.Md. June 22, 2012) (intake
questionnaire was sufficient to constitute a charge where it
identified complainant with contact information, employer with
contact information, and the basic outline of the alleged
discrimination).  These were later transformed into a formal
EEOC charge dated July 28, 2011.  Consequently, Plaintiff's
November 2010 communications with the EEOC are sufficient to
constitute a charge for purposes of timeliness.

Defendants also argue that even if some of the alleged
discrimination occurred within 300 days of filing a charge with
the EEOC, Plaintiff has not demonstrated that the alleged

discrimination at issue here – Defendants' failure to act on Plaintiff's request for intervention – fell within the 300 day window.  Failure to intervene is a discrete act for which the "continuing violation" theory does not apply.  *See Szedlock v. Tenet*, 61 F.App'x 88, 93 (4th Cir. 2003) ("The Supreme Court's ruling in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), [] makes clear that unless the plaintiff alleges a hostile work environment . . . , each instance of discrimination is a discrete act.").  Consequently, Plaintiff may only proceed and recover on deliberate discrimination that occurred within the limitations period, *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214-215 (2010), although she is not barred from using prior acts as background evidence in support of a timely claim, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also id.* at 114 (rejecting the concept of "serial violations," *i.e.*, "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability.").

In her deposition, Plaintiff states that Mr. Palmer forced Plaintiff to meet with him on a daily basis while he was allegedly sexually harassing her.  Before these meetings, Plaintiff would call AFSCME 2250 and ask for assistance, but the union would tell her to go into the room, listen to what Mr.

Palmer had to say, and bring it back to them.  (ECF No. 66-2, at
11, Trans. 64:7-18; *id.* at 13-14, Trans. 252:5 - 252:22).
Plaintiff's EEOC charge states that the latest discriminatory
action occurred on April 15, 2010.  Plaintiff can proceed, but
only on those alleged discriminatory acts that occurred within
300 days of her November 8, 2010 letter to the EEOC (January 12,
2010), although she is free to use acts that fall beyond that
timeframe as background evidence.

The next timeliness argument submitted by Defendants
concerns Plaintiff's right-to-sue letter.  Title VII requires a
plaintiff to bring a discrimination claim within 90 days from
the date of receipt of the right-to-sue letter.  42 U.S.C. §
2000e-5(f).  When the actual date of receipt is confirmed by
evidence, that date governs.  *See Dixon v. Digital Equip. Corp.*,
976 F.2d 725, 1992 WL 245867, at *1 (4th Cir. Sept. 30, 1992)
(table).  If the date of the receipt is unknown or in dispute,
the court applies the presumption in Rule 6(e) that service is
received within three days.  *See, e.g., Nguyen v. Inova
Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446, at *3 (4th Cir.
July 30, 1999) (table).

Plaintiff's amended complaint did not provide the date on
which the right-to-sue letter was received, instead merely
stating that the complaint was filed "within 90 days after
receiving a notice of the right to sue from the EEOC."

Defendants argue that Plaintiff failed to provide any evidence through discovery that she filed her lawsuit within the 90-day window and dismissal is warranted.   Plaintiff has since come forth with her right-to-sue letter from the EEOC.   The letter is dated March 30, 2012.   The envelope it arrived in is postmarked April 3, 2012.   An affidavit provided by Plaintiff's counsel does not state when Plaintiff received the letter.   Using Rule 6(e)'s presumption, the letter was received on April 6, 2012. 90 days from April 6, 2012 is July 5, 2012.   Plaintiff filed her complaint in this court on July 3, 2012.   Therefore, her complaint will be considered timely.

Defendants finally argue that, even if Plaintiff has cleared all the procedural hurdles to filing a claim of discrimination in federal court, she can point to no evidence to support a finding of liability as to either Defendant for either of the two counts in her complaint.   They first argue that judgment should be entered for Defendant Adams because a supervisor cannot be held individually liable for Title VII violations.   Plaintiff does not respond to Defendants' argument and, if anything, seems to acknowledge that Adams is not a proper defendant, writing at one point that "[t]he only Defendant at issue here is the Union." (ECF No. 65, at 10).   It is well established that individuals cannot be liable under Title VII.   *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180

28

(4th Cir. 1998).   Thus, Plaintiff's Title VII claims against Defendant Adams cannot continue.

Title VII prohibits labor unions such as AFSCME 2250 from engaging in certain types of discriminatory conduct. Relevant here, Section 2000e-2(c) provides:

> It shall be an unlawful employment practice for a labor organization—
>
> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
>
> . . .
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c)(1), (3).   Under Subsection 2(c)(1), a labor union can be liable where it directly engages in discrimination by, for example, deliberately refusing to pursue a sexual harassment grievance on behalf of a plaintiff.   *See, e.g., Goodman v. Lukens Steel Co.,* 482 U.S. 656, 667 (1987) (the phrase "otherwise to discriminate" encompasses a union's "deliberate choice not to process grievances" initiated by black employees alleging racial discrimination), *superseded on other grounds by statute,* 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371 (2004); *Agosto v. Correctional Officers Benevolent Ass'n,* 107 F.Supp.2d 294, 303

29

(S.D.N.Y. 2000) (explaining that a labor union "otherwise discriminate[s]" in violation of Title VII when it fails to represent one of its members in the grievance process because of that member's race, color, religion, sex, or national origin); *EEOC v. Regency Architectural Metals Corp.,* 896 F.Supp. 260, 269 (D.Conn. 1995) (holding that *Goodman* "applies equally to sex discrimination"). Pursuant to Subsection 2(c)(3), a labor union can also be held liable for discrimination perpetrated by the plaintiff's employer if the union "'instigat[es] or actively support[s]'" the employer's discriminatory acts. *Hubbell v. World Kitchen, LLC,* 717 F.Supp.2d 494, 501 (W.D.Pa. 2010) (*quoting Anjelino v. N.Y. Times Co.,* 200 F.3d 73, 95 (3ᵈ Cir. 1999)); *see also McCollum v. Int'l Brotherhood of Boilermakers,* No. 03CV00355, 2004 WL 595184, at *3 (M.D.N.C. Mar. 10, 2004) (a claim under Subsection 2(c)(3) requires "active participation" by the union; "passive acquiescence" is not enough) (internal quotation marks omitted). Plaintiff, in her opposition, presents her claims thusly: "Defendant also seems confused about the allegations in the complaint and who the parties are. The only Defendant at issue here is the Union. Plaintiff argues that the Union discriminated against her in violation of Title VII when it rejected her request to file a sexual harassment grievance against the Board. A union's deliberate refusal to file grievable discrimination claims violates Title VII." (ECF

No. 65, at 10).  Consequently, Plaintiff brings a claim under subsection (c)(1), because her argument is not that AFMSCE 2250 instigated or actively supported discriminatory acts perpetrated by others, but instead itself discriminated against Plaintiff, a member of the union.

The Fourth Circuit has not opined on the elements of a Title VII claim against a union for failure to file grievable discrimination claims.  Where the plaintiff is not alleging a policy of failure to file discrimination grievances, but instead asserts a discrete refusal, courts outside this district have required a plaintiff to demonstrate that: (1) she had a meritorious claim of discrimination; (2) she affirmatively requested that her union intervene to remedy the alleged discrimination; and (3) her union deliberately refused or failed to act on that request for discriminatory reasons. *Young-Smith v. Bayer Health Care, LLC*, 788 F.Supp.2d 792, 806 (N.D.Ind. 2011); *Hubbell*, 717 F.Supp.2d at 502-03; *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 728-29 (N.D.Ohio 2008); *Rainey v. Town of Warren*, 80 F.Supp.2d 5, 18-19 (D.R.I. 2000); *Regency Architectural*, 896 F.Supp. at 268-70; *Catley v. Graphic Commc'ns Intern. Union, Local 277-M*, 982 F.Supp. 1332, 1340-43 (E.D.Wis. 1997); *cf. York v. AT&T*, 95 F.3d 948, 957 (10th Cir. 1996) (granting summary judgment for union where plaintiff offered no evidence establishing that the union knew of intentional

31

discrimination by employer). Where the union knows of actual discrimination and deliberately ignores a member's request, the inference that the union acted with a discriminatory motive can be drawn without comparator evidence. *Young-Smith*, 788 F.Supp.2d at 807 n.10 (citing *Rainey*, 80 F.Supp.2d at 18); *Hubbell*, 717 F.Supp.2d at 504 n.5 (same). By contrast, "[w]here a grievance is not based on an underlying claim of discrimination, an inference of discriminatory motive cannot be drawn in the absence of evidence that individuals outside of plaintiff's class were more favorably treated." *Hubbell*, 717 F.Supp.2d at 506 n.7. Where a plaintiff establishes a *prima facie* case, the familiar *McDonnell Douglas* framework applies, with the burden of production shifting to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If that reason is credible, the ultimate burden lies with the plaintiff to demonstrate that that reason is actually pretext for discrimination.

Neither side shows much enthusiasm for arguing the merits of Plaintiff's claim, but taking the limited evidence produced in the light most favorable to the Plaintiff, she has demonstrated a genuine dispute of material fact concerning the circumstances of AFSCME 2250's refusal to grieve her discrimination claims against the Board of Education. In her deposition, Plaintiff testifies that Mr. Palmer was constantly

32

bothering Plaintiff.   He would occasionally touch her, follow her to her bus, and get close up and talk to her.   Any time they had a meeting, he would want to sit "real close" to her.   She made it known to Mr. Palmer that she did not like him, but still he worked to be close to her.   She informed multiple union members about her concerns and requested that they file a grievance and provide someone to accompany her on any meetings with Mr. Palmer, but the union did neither.   Taking the evidence in the light most favorable to Plaintiff, she had a colorable claim of sexual harassment, approached the union and requested assistance, which the union ignored or refused to assist.

Defendant does not mount any sort of defense or provide any explanation for these allegations, except for the conclusory statement – buried in a footnote – that "there is no record evidence to support a finding of liability against the Defendants for either of the two counts in Plaintiff's amended complaint."   (ECF No. 59-1, at 8 n.5).   Consequently, Defendants' motion for summary judgment will be denied as to AFSCME 2250.

## III. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be granted in part and denied in part. The motion for an extension of time will be granted.   The motion

to compel and the motion to strike will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
